United States District Court
for the
Southern District of Florida

| | |
|---|---|
| William Christie, Plaintiff, | ) |
| | ) |
| v. | ) |
| | ) Civil Action No. 20-22439-Civ-Scola |
| Royal Caribbean Cruises, Ltd. and others, Defendants. | ) |

**Order On Motions to Dismiss**

Now before the Court are Defendants Jefferson Insurance Company and AGA Service Company's (the "Insurance Defendants") motion to dismiss the Plaintiff's complaint (ECF No. 17) as well as Defendant Royal Caribbean Cruises Ltd.'s motion to dismiss count VI of the Plaintiff's complaint (ECF No. 22). For reasons stated below, the Court **denies** the Insurance Defendants' motion to dismiss Counts VII, VIII, IX and X of the complaint (**ECF No. 17**) and **grants** Royal Caribbean's motion to dismiss Count VI of the complaint (**ECF No. 22**). The Plaintiff is directed to file his amended complaint in a manner consistent with this order by **November 3, 2020**.

I. **Background**[1]

The Plaintiff William Christie was a passenger on Royal Caribbean's *Symphony of the Seas*. (ECF No. 1 at ¶8.) In connection with his trip on Royal Caribbean's vessel, Mr. Christie purchased travel insurance from Defendant Jefferson Insurance Company, a travel insurance policy underwriter. (ECF No. 1 at ¶3.) That policy was serviced by Defendant AGA Service Company. (ECF No. 1 at ¶3.) In connection with this policy, Mr. Christie alleges the Insurance Defendants were obligated to provide for "the coordination and supervision of emergency medical care for the Plaintiff during the subject cruise." (ECF No. 1 at ¶3.)

While aboard Royal Caribbean's vessel, on July 1, 2019, Mr. Christie began experiencing severe back pain and visited the ship's medical facility, where he was treated by Pranjal Pathak, one of the ship's doctors. (ECF No. 1 at ¶16.) Mr. Christie claims his back pain was so severe he was unable to lay on the examination table and was "unable to walk." (ECF No. 1 at ¶16.) As a result of

---

[1] The Court accepts the Plaintiffs' factual allegations as true for the purposes of evaluating the Defendants' motions to dismiss. *Brooks v. Blue Cross & Blue Shield of Fla., Inc.*, 116 F.3d 1364, 1369 (11th Cir. 1997).

this, Mr. Pathak gave Mr. Christie certain treatments and suggested he follow-up with his personal doctor when he was back home in Florida after the cruise. (ECF No. 1 at ¶18.)

The next day, July 2, 2019, Mr. Christie's condition had not improved. Still unable to walk, and now unable to have a bowel movement, Mr. Christie returned to the ship's medical facility where a Nurse, Iuliana Bratu, gave Mr. Christie a glycerin suppository for his wife to administer to him. (ECF No. 1 at ¶20.) Mr. Christie alleges that no medical record was created for this event and he received no follow-up from the ship's medical staff. (ECF No. 1 at ¶20.)

On July 3, 2019, Mr. Christie was still unable to walk and had to return to the ship's medical facility by wheelchair. Mr. Christie alleges that up through this point the ship's doctors, including Dr. Randall Ortel, assumed Mr. Christie was suffering from sciatica and after realizing this was not the case, referred Mr. Christie to a hospital in Puerto Rico for a lumbar spine MRI and treatment. (ECF No. 1 at ¶21.) The hospital where Mr. Christie was referred by Royal Caribbean did not have an available MRI scanner. (ECF No. 1 at ¶21.) Mr. Christie alleges that at this point, he contacted AGA and Jefferson to assist in coordinating his emergency medical care. (ECF No. 1 at ¶21.) After attempting to get an MRI at the hospital he was referred to, Mr. Christie was told there were no scanners available that day and that they would need to come back tomorrow. (ECF No. 1 at ¶25.) While waiting for his MRI scan, Mr. Christie and his wife attempted to arrange through AGA to have Mr. Christie airlifted to a medical facility in Florida, however, AGA would not agree to do so until Mr. Christie received an MRI. (ECF No. 1 at ¶23-25.)

Eventually, the Christie's chartered their own air ambulance for $10,000.00 and had Mr. Christie airlifted from Puerto Rico to a hospital in Tampa, Florida. (ECF No. 1 at ¶27.) After being admitted, Mr. Christie was diagnosed with cauda equina syndrome and underwent an emergency spinal decompression surgery. (ECF No. 1 at ¶28.) Mr. Christie alleges that the delay in his obtaining surgery resulted in permanent injury, including paralysis. (ECF No. 1 at ¶28-32.)

The Insurance Defendants have moved to dismiss counts VII, VIII, IX and X of the Plaintiff's complaint (ECF No. 17) and Royal Caribbean has moved to dismiss Count VI of the Complaint on the grounds that it is a facially deficient pleading.

## II.   **Standard of Review**

When considering a motion to dismiss, the Court must accept all the complaint's allegations as true, construing them in the light most favorable to the Plaintiff. *Pielage v. McConnell*, 516 F.3d 1282, 1284 (11th Cir. 2008). Under

Federal Rule of Civil Procedure 8, a pleading need only contain "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). The Plaintiff must nevertheless articulate "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949 (2009). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Id.* Thus, a pleading that offers mere "labels and conclusions" or "a formulaic recitation of the elements of a cause of action" will not survive dismissal. *Id.* In applying the Supreme Court's directives in *Twombly* and *Iqbal*, the Eleventh Circuit has provided the following guidance to the district courts:

> In considering a motion to dismiss, a court should 1) eliminate any allegations in the complaint that are merely legal conclusions; and 2) where there are well-pleaded factual allegations, assume their veracity and then determine whether they plausibly give rise to an entitlement to relief. Further, courts may infer from the factual allegations in the complaint obvious alternative explanation[s], which suggest lawful conduct rather than the unlawful conduct the plaintiff would ask the court to infer.

*Kivisto v. Miller, Canfield, Paddock & Stone, PLC*, 413 F. App'x 136, 138 (11th Cir. 2011) (citations omitted).

### III. Legal Standards

#### A. Shotgun Pleadings

"Courts in the Eleventh Circuit have little tolerance for shotgun pleadings." *Vibe Micro, Inc. v. Shabanets*, 878 F.3d 1291, 1294-95 (11th Cir. 2018). They violate Federal Rules of Civil Procedure 8(a)(2) and 10(b), "waste scarce judicial resources, inexorably broaden the scope of discovery, wreak havoc on appellate court dockets, and undermine the public's respect for the courts." *Id.* (quotations and alterations omitted). When presented with a shotgun pleading, a district court "should strike the pleading and instruct counsel to replead the case—if counsel could in good faith make the representations required by Fed. R. Civ. P. 11(b)." *Jackson v. Bank of Am., N.A.*, 898 F.3d 1348, 1357-58 (11th Cir. 2018) ("This is so even when the other party does not move to strike the pleading"). One type of shotgun pleading is where a complaint fails to "separate[] into a different count each cause of action or claim for relief." *Weiland v. Palm Beach Cty. Sheriff's Office*, 792 F.3d 1313, 1322-23, n.13 (11th Cir. 2015).

### B. Scope of Tort Claim in a Contract Case

The economic loss rule is "a judicially created doctrine that sets forth the circumstances under which a tort action is prohibited if the only damages suffered are economic losses." *Koski v. Carrier Corp.*, 347 F. Supp. 3d 1185, 97 (S.D. Fla. 2017) (Scola, J.) (quoting *Tiara Condo Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 110 So. 3d 399, 401 (Fla. 2013)). The rule is the "fundamental boundary between contract law, which is designed to enforce the expectancy interests of the parties, and tort law, which imposes a duty of reasonable care and thereby encourages citizens to avoid causing physical harm to others." *Id.* The rule prohibits parties in contractual privity from suing in tort for purely economic losses. *Id.*; *see also Tiara Condo Ass'n, Inc. v. Marsh & McLennan Cos., Inc.*, 714 F.3d 1253, 1257 (11th Cir. 2013).

In 2013, the Florida Supreme Court ruled that "the application of the economic loss rule [wa]s limited to products liability cases" but in a concurrence to that opinion, Justice Pariente wrote "the majority's conclusion . . . does not undermine Florida's contract law or provide for an expansion in viable tort claims . . . [f]or example, in order to bring a valid tort claim, a party still must demonstrate that all of the required elements for the cause of action are satisfied, including that the tort is independent of any breach of contract claim." *USI Insurance Services LLC v. Simokonis*, No. 15-cv-24337-Moreno/O'Sullivan, 2016 WL 11547701, at *6 (S.D. Fla. April 15, 2016) (internal citations omitted). The rule detailed in Justice Pariente's concurrence is known as the "independent tort rule." That rule prevents a party from seeking recovery in tort for what is actually a breach of contract claim. *Ca. Inst. of Arts and Tech. v. Campus Mgmt. Corp.*, No. 18-24701-Civ-Smith, 2020 WL 1692079, at *5 (S.D. Fla. Jan. 22, 2020) (Smith, J.). Since the Florida Supreme Court's ruling, district courts in the Eleventh Circuit have split on whether the "independent tort rule remains intact following the *Tiara* decision." *Id.* at *6-8 (collecting cases). While some courts have held the independent tort rule is still applicable despite the majority's opinion in *Tiara*, others have found Justice Pariente's concurrence to be mere dicta.

This Court has recently held in two opinions that the independent tort rule survived the Florida Supreme Court's ruling in *Tiara*. Accordingly, a Plaintiff must plead an independent tort, separate and apart from their contract-based claims, in order to have a viable tort claim relating to activities governed by a contract. For instance, in *Capten Trading Ltd. v. Banco Santander International*, the Court dismissed negligence claims, among other reasons, because the Plaintiff "failed to establish a recognized duty existing outside the parties' contractual relationship" and noted that "fundamental contract principles . . .

bar a tort claim where a defendant has not committed a breach of duty independent of his breach of contract." *Capten Trading Ltd. v. Banco Santander Int'l*, No. 17-20264-Civ-Scola, 2018 WL 1558272, at *5 (S.D. Fla. March 29, 2018) (Scola, J.). Similarly, in *Perez v. Scottsdale Ins. Co.*, the Court again applied the independent tort rule, noting the rule had recently been reaffirmed by Florida's Third District Court of Appeals. *Perez v. Scottsdale Ins. Co.*, No. 19-22761-Civ-Scola, 2019 WL 5457746, at *3-4 (S.D. Fla. Oct. 24, 2019). Consistent with the prior practice of the Court, for a plaintiff to state a viable tort claim where that claim is derived from a contractual relationship, the Plaintiff must allege all required elements for its cause of action and state a "recognized duty existing outside of" that contractual relationship. *Capten*, 2018 WL 1558272, at *5.

### C. Undertaker's Doctrine

Florida courts have articulated a doctrine, known as the undertaker's doctrine, which states generally that "whenever one undertakes to provide a service to others, whether one does so gratuitously *or by contract*, the individual who undertakes to provide the service thereby assumes a duty to act carefully and to not put others at undue risk of harm." *Weinberg v. Advanced Data Processing, Inc.*, 147 F. Supp. 3d 1359, 1365 (S.D. Fla. 2015) (Bloom, J.) (emphasis added) (citing *Clay Elec. Coop., Inc. v. Johnson*, 873 So. 2d 1182, 1185 (Fla. 2003)). Indeed, this doctrine is recognized as an "entrenched aspect of Florida tort law." *Wallace v. Dean*, 3 So. 3d 1035, 1051 (Fla. 2009).

Section 342A of the Restatement (Second) of Torts sets forth the appropriate standard for assessing liability where a Plaintiff alleges a cause of action pursuant to the undertaker's doctrine. The Restatement provides:

> One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of a third person or his things, is subject to liability to the third person for physical harm resulting from his failure to exercise reasonable care to protect his undertaking, if
>
> (a) his failure to exercise reasonable care increases the risk of such harm, or
>
> (b) he has undertaken to perform a duty owed by the other to the third person, or

> (c) the harm is suffered because of reliance of the other or the third person upon the undertaking.

Restatement (Second) of Torts § 342A. The undertaker's doctrine has been applied by Courts where duties under a contract were allegedly negligently performed. *See Johnson v. Aetna Cas. & Sur. Co.*, 348 F. Supp. 627, 628-29 (M.D. Fla. 1972) (recognizing applicability of undertaker's doctrine where store contracted with insurer for insurer to make periodic inspections of its premises to detect any hazardous conditions). The undertaker's doctrine creates a duty over and above a party's duty under a contract and therefore can provide the basis for an independent tort sufficient to satisfy the independent tort rule.

## IV. Analysis
### A. Counts VII and VIII, Breach of contract against the Insurance Defendants

The Insurance Defendants argue that the Court must dismiss Counts VII and VIII of the Plaintiff's complaint on the grounds that they impermissibly seek damages for items "not contemplated under the travel insurance policy." (ECF No. 17 at 7.) Specifically, the Insurance Defendants claim that the travel insurance policy at issue provided "specific amounts and types of coverage" including "emergency transportation coverage and emergency medical and dental coverage" with a "maximum benefit of $500,000 and $25,000, respectively. (ECF No. 17 at 7.) The Insurance Defendants assert that the policy does "not contemplate coverage for lost income and earning capacity, pain, suffering, disability, physical impairment, mental anguish, and all the other tort compensatory damages that Plaintiff seeks." (ECF No. 17 at 7.) In response, the Plaintiff argues that he may plead damages related to personal injury resulting from negligent performance of a contract. (ECF No. 18 at 10.)

In Florida, the injured party in a breach of contract action may recover damages that will put the party in the same position they would have been in had the other party not breached the contract. *Capital Envtl. Servs., Inc. v. Earth Tech, Inc.*, 25 So. 3d 593, 596 (Fla. 1st DCA 2009). Recoverable damages are inclusive of "all damages that are causally related to the breach so long as the damages were reasonably foreseeable at the time the parties entered into the contract." *Id.* Damages are "foreseeable if they are the 'proximate and usual consequence' of the breaching party's act." *Id.* Accordingly, it is *not* necessary that the parties "contemplated the exact injury which occurred as long as the actual consequences could have been reasonably expected to flow from the breach." *Id.*

Here, the Plaintiff alleges that the Parties' contract required the Insurance Defendants to assist in "coordinating and supervising emergency medical care, if needed, during the [Plaintiff's] cruise vacation." (ECF No. 18 at 2.) The Plaintiff claims that the Insurance Defendants breached their contractual duties by failing to coordinate emergency medical services after the Plaintiff began experiencing severe back pain which ultimately caused him to suffer permanent disabilities, including paralysis. (ECF No. 17 at 2.) While the Insurance Defendants claim that the tort-style damages sought by the Plaintiff were not contemplated by the Parties it is not necessary that the parties contemplated such damages when entering into their contract. Rather, under Florida law, the Plaintiff need only plead that his injury was a foreseeable consequence of the Insurance Defendants' breach. Making all inferences in favor of the Plaintiff, the Court finds that the Plaintiff has adequately plead that his injuries were a foreseeable consequence of the Insurance Defendants' alleged failure to perform under the contract. Specifically, the Court finds that it is foreseeable that failure to adequately coordinate emergency medical services could result in significant personal injury which would result in the tort-style damages the Plaintiff seeks. Indeed, the Insurance Defendants fail to advance any argument contesting the foreseeability of the Plaintiff's damages.

In light of the above, the Court denies the Insurance Defendants' request that the Court dismiss Counts VII and VIII of the Plaintiff's complaint.

### B. Counts IX and X, Negligent failure of the Insurance Defendants to coordinate medical care

Next, the Insurance Defendants request the Court dismiss Count IX and X of the Plaintiff's complaint on the grounds that the Plaintiff fails to allege an independent tort beyond the breach of the insurance contract at issue. (ECF No. 17 at 4.) In response, the Plaintiff argues that his tort claims are proper on three grounds: 1) a plaintiff may pursue a tort claim based on negligent performance of a contract where such negligence results in personal injury; and 2) the Insurance Defendants breached their duty to the Plaintiff under the undertaker's doctrine; and 3) the Insurance Defendants' actions created a foreseeable zone of risk giving rise to a duty owed by the Insurance Defendants to the Plaintiff. (ECF No. 18 at 3-5.) As stated above, this Court adheres to the independent tort rule and accordingly, for the Plaintiff's tort claims against the Insurance Defendants to survive the Insurance Defendants' motion to dismiss, the Plaintiff must have plead a tort claim independent of the alleged breach of contract.

The Court finds that the Plaintiff has met its burden. The Plaintiff has adequately plead that the Insurance Defendants owed a duty to the Plaintiff

under the undertaker's doctrine and there for has plead an independent tort in satisfaction of the independent tort rule. The undertaker's doctrine requires that when the Insurance Defendants agreed to undertake the coordination of emergency medical care on Plaintiff's behalf, by way of contract between the parties, the Insurance Defendants had a duty to do so in a manner that did not put the Plaintiff at undue risk of harm. *See Weinberg*, 147 F. Supp. 3d at 1365. By allegedly negligently performing its duties to coordinate emergency medical services under the contract, the Insurance Defendants breached their duty to the Plaintiff and that breach arguably caused the Plaintiff's permanent injuries. *See Chaparro v. Carnival Corp.*, 693 F.3d 1333, 1336 (11th Cir. 2012) ("It is axiomatic that to establish negligence, the passenger must allege 1) duty; 2) breach of that duty; 3) causation; and 4) harm."). The Court therefore finds that the Plaintiff has adequately plead a tort independent of the breach of contract has been alleged by the Plaintiff. While the Insurance Defendants argue that the Counts VII, VIII, IX and X are impermissibly duplicative, the Court notes that negligent performance of a contract can give rise to a claim sounding in tort as well as one for breach of contract. *Ajax Hardware Mfg. Corp. v. Indus. Plants Corp.*, 569 F.2d 181, 185 (2d Cir. 1977).

The Court therefore denies the Insurance Defendant's request that the Court dismiss counts IX and X of the complaint. As the Court has found an independent tort was plead under the undertaker's doctrine, the Court need not reach the additional grounds raised by the Plaintiff in support of his tort claims against the Insurance Defendants.

### C. Count VI, Negligent hiring, selection, retention, monitoring, and training of the onboard medical staff and medical facility by the Defendant Royal Caribbean

In its motion to dismiss, Royal Caribbean asks the Court to dismiss Count VI of the Plaintiff's complaint on the grounds that it is a facially defective pleading. (ECF No. 22 at 2-3.) In response, the Plaintiff argues that it has alleged sufficient facts in support of Count VI, which seeks relief for "negligent hiring, selection, retention, monitoring, and training of the onboard medical staff and medical facility." (ECF No. 1 at 36.) Specifically, the Plaintiff notes they alleged that: Royal Caribbean "knew or should have known that the medical education of the staff . . . did not meet any reasonable standards" (ECF No. 1 at ¶101); a reasonable investigation of the ship doctors' prior training and experience would have revealed the doctors were unfit to work on the vessel (ECF No. 1 at ¶102); doctors Ortel and Pathak were "not capable, due to their insufficient education, training, and experience, to request, advocate for, and arrange a prompt

emergency medical evacuation from the vessel for Plaintiff" (ECF No. 23 at 4; *see also* ECF No. 1 at ¶¶103-04); Royal Caribbean failed to "sufficiently verify, investigate, background check, and screen the shipboard physicians *prior to hiring them*" (ECF No. 23 at 4; *see also* ECF No. 1 at ¶¶106-07) (emphasis in original); Royal Caribbean failed to provide adequate training to its medical staff regarding "situations where passengers should be transported off of its ships" (ECF No. 1 at ¶108); and Royal Caribbean had a duty to monitor the activities and abilities of its shipboard medical staff after they were hired and trained and therefore fit to be retained. (ECF No. 1 at 4-5; *see also* ECF No. 1 at ¶¶108-12.)

The Court agrees with the Defendant Royal Caribbean that the Plaintiff's pleading is deficient. To support its various claims under Count VI the Plaintiff must adequately plead facts supporting each of those claims. *Gharfeh v. Carnival Corp.*, 309 F. Supp. 3d 1317, 1332-33 (S.D. Fla. 2018) (Goodman, Mag. J.). Where the Plaintiff's pleadings, as here, are "fact-free, wholly conclusory, boilerplate allegations" that the cruise line knew or should have known about alleged deficiencies in the training and performance of its onboard medical staff, the Plaintiff has not done enough to plead facts making its claims plausible rather than merely possible. *Doe v. NCL (Bahamas) Ltd.*, No. 16-cv-23733-UU, 2016 WL 6330587, at *3 (S.D. Fla. Oct. 27, 2016) (Ungaro, J.); *see also* Fed. R. Civ. P. 8. As the Plaintiff's pleading could be interchangeably alleged against *any* cruise line defendant and its medical staff, the Court finds that the Plaintiff has failed to adequately allege viable causes of action under Count VI.

Moreover, the Court finds that Count VI is an impermissible shotgun pleading. Count VI attempts to cram multiple, distinct theories of liability into one claim. To the extent each theory is a separate cause of action, each must be asserted independently and with supporting factual allegations. *See Garcia v. Carnival Corp.*, 838 F. Supp. 2d 1334, 1337, n.2 (S.D. Fla. 2012) (Moore, J.) (dismissing maritime negligence claim that "epitomizes a form of 'shotgun' pleading," where the plaintiff alleged that Defendant owed a duty of "reasonable care under the circumstances," and then "proceed[ed] to allege at least twenty-one ways in which Defendant breached this duty"); *Brown v. Carnival Corp.*, 202 F. Supp. 3d 1332, 1338 (S.D. Fla. 2016) (Ungaro, J.) ("Simply alleging that Carnival owed Plaintiff a duty of 'reasonable care' in a conclusory fashion, while also pleading ["forty-one"] alleged breaches that purport to impose a heightened duty upon Carnival, is not sufficient to state a valid negligence claim under maritime law," and holding that "the burden will remain on Plaintiff to review her Complaint and ensure that each factual allegation is supported by law and plausible facts, and is alleged in good faith."); *Gayou v. Celebrity Cruises, Inc.*, No. 11-23359-Civ, 2012 WL 2049431, at *5-*6, n.2 (S.D. Fla. June 5, 2012) (Scola, J.) (ordering plaintiff to amend complaint to "separately allege an

independent count" for various theories of liability that were lumped into a single maritime negligence claim); *Flaherty v. Royal Caribbean Cruises, Ltd.*, No. 15-22295, 2015 WL 8227674, at *3 n.3 (S.D. Fla. Dec. 7, 2015) (Lenard, J.) (same); *Doe*, 2016 WL 6330587, at *3 (holding that Plaintiff's "boilerplate allegations" of breach of duty failed to state a claim for negligent hiring and retention, training and supervision under maritime law, and ordering Plaintiff to "allege each of these three claims **in separate Counts**" in an amended complaint (emphasis in original)); *Ciethami v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1349-50 (S.D. Fla. 2016) (Williams, J.) (holding that maritime negligence claim failed Rule 8(a), where the Plaintiff's "shotgun-style recitation[]" of "34 breaches of duty," "without any factual context," makes "any meaningful assessment of her claims difficult"); *Gharfeh v. Carnival Corp.*, No. 17-20499, 2018 WL 501270, at *3, *6-*7 (S.D. Fla. Jan. 22, 2018) (Goodman, Mag. J.) (dismissing maritime negligence count that "improperly commingles claims" as an "impermissible shotgun pleading"); *Gharfeh*, 309 F. Supp. 3d at 1333, n.7 (dismissing negligence claim where Plaintiff "has done little more than assert fact-free, wholly conclusory, boilerplate allegations" and requiring in any amended pleading that the plaintiff "allege facts, not merely labels and boilerplate conclusions"); *Ward v. Carnival Cruises*, No. 17-24628, 2019 WL 342027, at *2-*3, n.1, n.2 (S.D. Fla. Jan. 28, 2019) (Scola, J.) (collecting cases). Further, the Plaintiff must eliminate any redundant allegations.

Given that the Plaintiff has failed to adequately allege facts sufficiently supporting its claims in Count VI and in further consideration of the fact that Count VI is an impermissible shotgun pleading, the Court grants Royal Caribbean's motion to dismiss Count VI of the Plaintiff's complaint.

## V. Conclusion

The Court **denies** the Insurance Defendants' motion to dismiss in its entirety. (**ECF No. 17**.) The Court **grants** Royal Caribbean's motion to dismiss (**ECF No. 22**) and orders the Plaintiff to replead Count VI of the complaint by **November 3, 2020**. Alternatively, if the Plaintiff wishes to abandon its claims in Count VI, the Plaintiff should advise the Court that it wishes to proceed under the current complaint, with Count VI dismissed.

The Court also notes that the Plaintiff requested "the opportunity to conduct discovery before amending his complaint so that he may plead his claims for negligent hiring, selection, retention, monitoring and training with the benefit of [Royal Caribbean's] employment files for the medical staff at issue." (ECF No. 23 at 6.) The Court **denies** this request. The Plaintiff is "seeking to change the logical sequence of litigation" and "seeks discovery to learn whether it may be able to assert a valid claim." *Sovereign Bonds Exch. v. Fed. Republic of*

*Ger.*, No. 10-219440-Civ., 2011 WL 13100214, at *1 (S.D. Fla. Aug. 9, 2011) (Altonaga, J.) (internal quotations omitted). The Eleventh Circuit has repeatedly instructed that facial challenges to a claim, such as a motion to dismiss, must be resolved before discovery begins. *Id.* (discussing *Chudasama v. Mazda Motor Corp.*, 123 F.3d 1353, 1367 (11th Cir. 1997)). Parties may not file insufficient complaints with the hopes of receiving discovery to make them sufficient. *Id.* at *2.

**Done and ordered** at Miami, Florida on October 20, 2020.

_____
Robert N. Scola, Jr.
United States District Judge