UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA
MIAMI DIVISION

WILLIAM CHRISTIE,

      Plaintiff,

v.

ROYAL CARIBBEAN CRUISES, LTD.,
JEFFERSON INSURANCE COMPANY and
AGA SERVICE COMPANY, d/b/a
ALLIANZ GLOBAL ASSISTANCE,

      Defendants.

CASE NO. 1:20-cv-22439-RNS
Judge Robert N. Scola, Jr.
Magistrate Edwin G. Torres

**DEFENDANTS AGA SERVICE COMPANY AND JEFFERSON INSURANCE
COMPANY RESPONSE IN OPPOSITION TO PLAINTIFF'S
<u>MOTION TO COMPEL AND FOR SANCTIONS</u>**

Defendants, AGA SERVICE COMPANY d/b/a ALLIANZ GLOBAL ASSISTANCE and

JEFFERSON INSURANCE COMPANY (collectively, "AGA"), by and through the undersigned

counsel and pursuant to Magistrate Judge Edwin G. Torres' paperless order entered on June 11,

2021, files this response in opposition to Plaintiff's motion to compel and for sanctions ("Motion"),

and in support thereof, states as follows:

<u>**INTRODUCTION**</u>

This is an action for personal injury and breach of contract brought by Christie against

defendants, ROYAL CARIBBEAN CRUISES, LTD. ("RCCL") and AGA. Christie's claims

against AGA arise from a travel insurance policy issued to him in anticipation of his cruise aboard

RCCL's *Symphony of the Seas*. He alleges AGA breached the policy by failing to assist him in

finding medical care and, ultimately, failing to evacuate him from Puerto Rico to St. Petersburg,

Florida, following a medical episode. He further alleges negligence against AGA based on the same facts.

AGA denies Christie's allegations and asserts, among other things, that it fulfilled all of its obligations under the policy, and did not act negligently.

## PRELIMINARY STATEMENT

On April 21, 2021, Christie's counsel e-mailed the undersigned requesting AGA's corporate representative's deposition. According to the Notice, Christie intended to depose AGA regarding sixty-five (65) topics. These topics are excessive in number and over broad in scope, and are, therefore, unduly burdensome. Moreover, the Notice called for AGA's corporate representative to testify to issues that are of an expert nature and/or reveal mental impressions of counsel protected by the work product and attorney-client privileges.

AGA's counsel conferred with Christie's counsel via email on April 22 and by phone on April 27, 2021 in an effort to narrow the scope of the Notice. However, Christie's counsel did not agree to *any* limitation of the most burdensome and unwieldly topics in the Notice. Accordingly, on May 13, 2021, AGA filed its Motion for Protective Order and Objections to Plaintiff's Deposition Notice, seeking an order to limit the scope of Christie's Rule 30(b)(6) deposition. [63]. The court denied AGA's motion, and treated the issues raised therein as Rule 30 objections to the scope of the Notice. [65].

Shortly thereafter, AGA supplemented its answers to plaintiff's interrogatories in an effort to provide plaintiff with much of the sought-after information without the need for legal and medical expert testimony by its corporate designees. *See* Ex. A, AGA Service Company's Notice of Serving Supplemental Responses to Plaintiff's Interrogatories. AGA also designated and fully prepared three corporate witnesses to testify to each of the sixty-five (65) topics noticed by

Christie: Jeffrey Rolander, Dr. Melissa Castro, and Lashanta Sullivan. On June 3, 2021, Christie deposed the 30(b)(6) witnesses of AGA. *See* Ex. B, Transcript of AGA's 30(b)(6) Deposition.

Throughout the deposition, Christie's counsel asked countless irrelevant questions far exceeding the scope of the Notice, improperly seeking testimony that is of a medical expert nature and regarding the mental impressions of counsel protected by the work product doctrine and that is attorney-client privileged. This forced AGA's counsel to object and, at limited times, instruct the witness not to answer because of privilege or witness badgering. Despite AGA's best efforts to resolve these issues prior to and during the deposition, but Christie's counsel refused. Instead, he filed the Motion, grossly misrepresenting the witnesses' testimony and objections made by AGA's counsel.

The portions of the transcript cited by Christie's counsel, himself, demonstrate AGA's counsel's repeated efforts to extend as much leeway as reasonably contemplated by the Rules to Christie's counsel, despite Christie's counsel repeated attempts to elicit irrelevant information outside the scope of the Notice, as well as information that the witnesses were not prepared to address. It is evident from the record that Christie's counsel's goal was to ambush AGA's counsel and their witnesses through misdirection, forcing counsel to prepare the witnesses to testify about sixty-five (65) topics, only to questions the witnesses regarding irrelevant topics not noticed and not within the witnesses' ability to address.

This type of discovery tactic is intended to place the defendants and their counsel in an impossible dilemma; i.e., allow their corporate representatives to be ambushed by irrelevant questions not related to the 30(b)(6) notice and risk confusion and disclosure of privileged information or, be subjected to a motion for sanctions like this. This was Christie's counsel's intent from the beginning, as clearly evidenced by the fact that Christie's Motion is based strictly on

topics *not* listed in the Notice. In fact, Christie does not argue, at all, that AGA failed to properly address topics in his Notice.

## ARGUMENT

First, this court should ignore all references to Jeffrey Rolander and LaShanta Sullivan's testimonies in Christie's Motion. While it is true that Mr. Rolander was instructed not to answer a question (based on the reasons listed here), Christie is not alleging prejudice as to Mr. Rolander and is not seeking to re-depose him. Ms. Sullivan was never instructed not to answer a question. References to these two witnesses are merely intended to inflame the court.

The remainder of Christie's Motion should be denied because: (a) AGA's counsel properly instructed witnesses not to answer Christie's improper and immaterial questions (often *after* the witnesses already answered the offending question at least once); (b) AGA's counsel properly raised the attorney-client privilege; (c) AGA's counsel made proper, concise objections as allowed under Federal Rules of Civil Procedure 32(d)(3); and (d) Christie failed to properly notice Mr. Rolander, Dr. Castro, and Ms. Sullivan for deposition.  Moreover, AGA acted in good faith by producing three well-prepared, knowledgeable witnesses to testify to Christie's sixty-five (65) topics and supplementing its interrogatory responses. Christie has not been prejudiced by any alleged lack of information.

## MEMORANDUM OF LAW

### I.  AGA'S COUNSEL PROPERLY INSTRUCTED WITNESSES NOT TO ANSWER CHRISTIE'S IMPROPER QUESTIONS.

Christie's attempts to question AGA's corporate representatives in their individual capacities on matters outside the scope of Rule 26(b)(1) and his 30(b)(6) notice or AGA's designations amounts to improper efforts to seek testimony that is immaterial and of a medical

- 4 -

expert nature. *See Sunwood Condo. Ass'n. v. Travelers Cas. Ins. Co. of Am.*, 2017 WL 1652965, at *3 (W.D. Wash. May 2, 2017); In re Intel Corp. Microprocessor Antitrust Litig., 2009 WL 2921313, at *2 (D. Del. Sept. 8, 2009)(finding defendant's deposition topics impermissible in the context of a Fed. R. Civ. P. 30(b)(6) deposition because they seek information concerning plaintiff's damages allegations, which implicate expert testimony).   AGA presented three witnesses, each of which was designated   to testify to certain of Christie's sixty-five (65) deposition topics: Jeffrey Rolander, Dr. Melissa Castro, and Lashanta Sullivan. None of AGA's corporate representatives are qualified as medical experts and cannot testify as such.

Christie mischaracterizes the nature of Dr. Castro's testimony and instructions by AGA's counsel not to answer, alleging – without any evidence – that counsel instructed Dr. Castro not to answer a question "just because the witness [was] testifying in a manner that is inconsistent with defense counsel's theory of the case." This baseless allegation is not supported by a reading of the transcript.

> Q. Do you agree that the assessment and stabilization would need to be done in a timely manner under the circumstances of this case where Dr. Bush above said that the services neurosurgery and MRI are emergent?
> MR. RENDA: Objection to form.
> A. I can't speak to the length of time it would have taken. That -- again, that is out of my area of expertise, and I think that's speculation on what is a time frame. There wasn't a time frame provided.
> Q. Well, that's a good point. Did anybody ask, to your knowledge, about just how emergent this situation was?
> MR. RENDA: Objection to form.
> WITNESS CASTRO.: That information was not provided to us by Dr. Randall Ortel.
> BY MR. FLANAGAN:
> Q. Was it requested by anybody from AGA or JIC?
> MR. RENDA: Objection to form.
> WITNESS CASTRO: Not to my knowledge.
> BY MR. FLANAGAN:
> Q. Should it have been requested, "How much time do we have?" Should that question have been asked?
> MR. RENDA: I am sorry. What did you say, Michael?
> BY MR. FLANAGAN:

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

Q. Should the question, "How much time do we have?" or "How emergent is this?" should that question have been asked?

MR. RENDA: Oh. Objection to form.

WITNESS CASTRO: I think that's speculation. As I have said, each case is different.

BY MR. FLANAGAN:

Q. So do you as the CMO [Chief Medical Officer of AGA/JIC] now think it's important to know, when someone is having an emergent medical condition, how much time you have to get them to a facility that can provide definitive care?

MR. RENDA: Just a minute. Again, Mr. Flanagan, I am just saying she is testifying as AGA, not a chief medical officer of a company. So objection to the form.

BY MR. FLANAGAN:

Q. But you can answer.

MR. RENDA: Go ahead, Doctor. You can answer the question.

WITNESS CASTRO: You would like to know if today I would request that information or I would have the medical team request that information?

BY MR. FLANAGAN:

Q. I am asking if under the circumstances of Mr. Christie's case should the chief medical officer or someone else from AGA, AZGA have asked for clarification regarding how much time does Mr. Christie have to get to definitive neurosurgical care?

MR. RENDA: Objection to the form of the question.

WITNESS CASTRO: But I can answer, right? I believe --

MR. RENDA: You can answer.

WITNESS CASTRO: -- that information -- I believe --

MR. RENDA: Yeah, you can answer.

WITNESS CASTRO: -- that information -- sorry, Bruno. Go ahead.

MR. RENDA: You can answer the question if you can, as yourself, not as AGA.

WITNESS CASTRO: As chief medical officer today, I believe that information should have been provided to us, that timeline should have been provided to us by the cruise ship physician who was the treating medical officer of the patient.

BY MR. FLANAGAN:

Q. Do you agree that information would be important for AGA and AZGA to know in making medical recommendations to the TMO and also to Mr. Christie?

MR. RENDA: Objection to form.

WITNESS CASTRO: Answering as myself and not AGA, that information would have been helpful.

BY MR. FLANAGAN:

Q. Why would it have been helpful?

MR. RENDA: Objection to the form of the question.

MR. DRAHOS: Join.

MR. RENDA: Just to be clear, are you going to continue to ask her, as an individual, questions about her opinion, as an individual, because that is

- 6 -

demonstrably outside the scope of this deposition? So I am trying to speak as low as possible so as not to be framed as whatever it was. But I object, I can't have this witness testify as herself about medical opinions and expert opinions. So I gave you a lot of leeway, but that's it.

MR. FLANAGAN: I -- I have to tell you, I hate the -- the long speaking on the record. And I don't like having to answer lawyer's questions on the record. The rules are the rules. I can ask a witness in their individual capacity how they view things. I can view -- ask the corporation. You've made it clear that you don't want this to be the representation of the corporation. I understand that. She is the CMO now. I am asking her questions. So she can answer in her individual capacity.

MR. RENDA: I disagree with your representations of the rule, and I have a notice of deposition with 65 topics that I prepared her and two other witnesses to answer on behalf of AGA, which is whose deposition is being taken this afternoon, and you're going outside the scope, so --

MR. FLANAGAN: Okay. I understand your objection. Judge Torres's rule is that we ask the questions. The questions get answered, and then we deal with it afterwards. So that is what I would like to do.

MR. RENDA: So just reasserting my objection to your -- to this line of questioning.

MR. FLANAGAN: I understand. So could our court reporter please read back the question.

(Thereupon, the question was read back.)

BY MR. FLANAGAN:

Q. Doctor, do you need the context for the one prior to answer?

A. No.

Q. Okay. So then the question is: Why would that information have been helpful?

MR. RENDA: All right. So I am going to instruct the witness to no longer answer questions posed to her as herself. I will take my chances with the magistrate, because I think this is inappropriate. So, Doctor, don't answer questions as yourself anymore.

MR. FLANAGAN: Could our court reporter please mark that.

Exhibit B, p. 175, L. 2 through p. 181, L. 8.

Dr. Castro was not chief medical officer at the time of Christie's incident, and has no personal knowledge of it. *See* Exhibit B, p. 114, L. 10-16 (confirming Dr. Julien Josseaume was chief medical officer at the time of Mr. Christie's incident).  Her individual opinions are irrelevant to any party's claims or defenses. She was designated to testify on topics 12-15, 17-21, 24, 25, 34-51, 56, 58, 64, 65.  Christie's counsel began asking questions of Dr. Castro far exceeding the scope of Rule 26(b)(1) his Notice. Nevertheless, after making appropriate objections, AGA's counsel

allowed Dr. Castro to answer several questions in her individual capacity. Only when it became clear that Christie's counsel was inappropriately seeking medical expert testimony from AGA's corporate representative, did AGA's counsel instruct Dr. Castro not to answer. *See* Ex. B, p. 178, L. 25 through p. 179, L. 10. Christie was free to depose Dr. Castro in her individual capacity upon proper notice. He opted to not give proper notice in an effort to blindside AGA and tie Dr. Castro's individual testimony to AGA as a company, then argue it was AGA's testimony. See Fed. R. Civ. P. 32(a)(3). This type of behavior is improper and should not be rewarded by this court.

Dr. Castro does not qualify as a medical expert and it is entirely inappropriate for counsel to seek expert testimony from a 30(b)(6) witness. *See Sunwood Condo. Ass'n*, 2017 WL 1652965, at *3; In re Intel Corp. Microprocessor Antitrust Litig., 2009 WL 2921313, at *2. Such information is better suited to expert discovery than a Rule 30(b)(6) deposition. *Sierra Club v. BNSF Railway Co.*, 2016 WL 4528452 at *3 (W.D. Wash., Aug. 30, 2016); *Trustees of Boston Univ. v. Everlight Elecs. Co.*, 2014 WL 5786492, at *4 (D. Mass. Sept. 24, 2014); *Darbeevision, Inc. v. C&A Marketing, Inc.*, 2019 WL 2902697 at *7 (C.D. Ca. Jan. 28, 2019). Moreover, AGA specifically objected to and sought a protective order limiting Christie from seeking testimony from AGA's corporate representatives that is of a medical expert nature. [63, at 5-6].

Also, AGA served Christie with supplemental answers to initial interrogatories, which provides much of the sought-after information. *See* Ex. A. Christie's counsel also previously deposed two AGA employees, Jessilyn McCash and Reem Mokbel, who were personally involved in Christie's incident, and elicited extensive testimony specifically regarding whether AGA appreciated the extremely emergent nature of Mr. Christie's condition and whether such information was communicated between AGA and co-defendant, Royal Caribbean Cruise Lines.

*See* Exhibit C, Deposition Transcript of Jessilyn McCash; Exhibit D, Deposition Transcript of

Reem Mokbel.

> Q. And the input is that neurosurgical evaluation and MRI are emergent and medically necessary. Patient should be disembarked to nearest available facility with these capabilities. If there is no neurosurgeon available in Puerto Rico due to the holiday, then patient should be disembarked and stabilized at the nearest ER with MRI capabilities and then an AA evac to NAF with neurosurgical capabilities." Correct?
> A. Correct.

Ex. C, p. 43, L. 24 through p. 44, L. 8.

> Q. At any time when you were involved in Mr. Christie's case on July 3rd, 2019, did you believe that Mr. Christie was suffering from a time sensitive medical emergency?
> A. I did not understand at the time that it was a time sensitive. I knew that there was urgency to the symptoms that were presented to us.
> Q. What was your understanding of the urgency?
> A. That any time a patient presents with decreased sensation to the lower limbs and incontinence, that something is going on that needs to be assessed and determined.

Ex. C., p. 61, L. 16 through p. 62, L. 3

> Q. And did the chief medical officer from Allianz tell you that an MRI was mandatory before Mr. Christie could travel by air ambulance?
> A. He said that he was in agreement that SMED said it was medically necessary and emergent along with a neurological assessment.

Ex. C., p. 78, L. 24 through p. 79, L. 4.

> Q. Let me ask you a questions. If the treating medical officer on the cruise ship told you that Mr. Christie is having a medical emergency and needs an air ambulance, book the flights, what should you do?
> MR. LATIMER: Form.
> THE WITNESS: I would have done the exact same thing, taken the medical information, discussing it with our doctors, and letting them make their recommendation based off of the information.

Ex. C., p. 85, L. 8 through 18.

> Q. Had you been told that Mr. Christie was suffering from a neurological emergency and that if he was not treated with neurosurgery promptly he would be paralyzed, would you have done anything differently?
> MR. LATIMER: Object to the form.
> MR. DRAHOS: Join.

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

CASE NO. 1:20-cv-22439-RNS

THE WITNESS: No.

Ex. C., p. 126, L. 5 through 12.

Q. What kind of medical attention did the cruise ship doctor want Mr. Christie to get?
A. An urgent MRI

Ex. D., p. 30, L. 2-4.

Q. Did you ask the doctor, "Do you have a diagnosis on what his current condition is?"
MR. RENDA: Objection to form.
THE WITNESS: No, I did not ask the doctor that, but the doctor did not know what was going on with the patient. That is why he needed the urgent MRI, to see what's going on.

Ex. D., p. 37, L. 14 through 21.

Q. If you had been told by the ship's doctor that he made a diagnosis of cauda equina syndrome for Mr. Christie, would that have changed the way you did anything in the case?
MR. DRAHOS: Objection to form.
THE WITNESS: So I treated the – this case urgently. I treated it as an urgent and emergent matter, based on the signs and symptoms. So regardless of whether I new (sic) it was CES or not, it was treated urgently.

Ex. D., p. 38, L. 17 through p. 39, L. 1.

Q. Okay. It appears, the title, "M3 M4 Case Escalation Template"?
A. Correct.
Q. And do you send this to SMED so that you can obtain their input on the medical cases?
A. Yes. We send it to them, yes. And if it's an urgent matter, like in Mr. Christie's case, we also do a phone call, which I did, along with the template.

Ex. D., p. 44, L. 10 through L. 18.

Q. What was your understanding of the urgency of Mr. Christie's medical condition after you spoke with SMED?
A. So I knew it was an urgent matter. I knew it was -- it was emergent to get this patient disembarked and stabilized. I recognized the urgency of it from -- from the beginning from when I was talking to the cruise ship doctor, and that is why I called SMED immediately. You know, I didn't just send them a template and waited for them to check their e-mail and reply back. I – I called SMED right away as soon as Jessilyn took over the call with the cruise ship doctor.

- 10 -

Ex. D., p. 58, L. 21 through p. 59, L. 8.

> Q. Well, the information that SMED provided to you was that "neurosurgical evaluation and MRI are emergent and medically necessary" and that the "patient should be disembarked to the nearest appropriate facility with these capabilities." That was part of what they told you, right?
> A. That is right, yeah. But they also said -- sorry -- that if that's not available, then for the patient to go to the nearest emergency department to be stabilized, and then we could evacuate via air ambulance to somewhere with neurosurgical capabilities.

Ex. D., p. 62, L. 6 through L. 18.

> Q. When you were communicating with the physician -- physician's assistant from SMED, did you have an understanding of just how urgent and emergent Mr. Christie's situation was?
> A. I did, yes.

Ex. D., p. 71, L. 1 through L. 5.

> Q. If you could go back in time to July 3rd, 2019, would you do anything different as far as work you did on Mr. Christie's medical case for AGA?
> MR. RENDA: Objection to form.
> THE WITNESS: I would not do anything differently. I feel like I handled the matter urgently. I treated it as an emergent situation, which it was. I followed the steps. You know, I consulted with the senior nurse, in which she joined me to kind of take care of this case. So, no, I would not do anything differently.

Ex. D, p. 74, L. 12 through 24.

Dr. Castro is not qualified as a medical expert. She was designated as an AGA corporate representative to testify to specific topics in the Notice. Conversely, Dr. Castro was not noticed for deposition in her individual capacity and should not have been questioned in a manner the comingles her personal testimony with AGA's.

Despite having no personal knowledge of Christie's incident, Christie's counsel attempted to improperly elicit testimony from Dr. Castro that is of a medical expert nature under the guise of questioning her in her individual capacity. Prior to her deposition AGA objected to such topics

- 11 -

and sought a protective order limiting Christie from seeking testimony from AGA's corporate representatives that is of a medical expert nature. AGA's counsel properly instructed Dr. Castro not to continue answering Christie's counsel's questions on the basis that the topics far exceeded the scope Rule 26(b)(1) and of Christie's Notice, and Dr. Castro is not qualified to testify as an expert. AGA did not have opportunity to file a second motion for protective order after said deposition because Christie's counsel attempted to set a hearing during the deposition and filed his motion to compel immediately thereafter. Therefore, this court should deny Christie's Motion.

## II.  AGA'S COUNSEL PROPERLY RAISED ATTORNEY-CLIENT PRIVILEGE.

Counsel may instruct a deponent not to answer a deposition question when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion to terminate or limit a deposition under Rule 30(d)(3). *Flexiteek Americas, Inc. v. PlasTEAK, Inc.*, 2009 WL 10667524 at *3 (S.D. Fla. May 18, 2009). Christie's counsel inappropriately sought testimony from AGA regarding the mental impressions of counsel protected by the work product doctrine and that is attorney-client privileged. Christie's counsel misrepresents AGA's testimony and counsel's objections to Christie's questions. AGA's counsel properly objected and instructed the witness not to answer to preserve attorney-client privilege.

> Q. So is it defendant AGA and JIC's position that Mr. Christie was negligent in leaving Centro Medico de Puerto Rico when he did?
> MR. RENDA: Objection to form, asked and answered.
> WITNESS ROLANDER: Yes.
> BY MR. FLANAGAN:
> Q. Okay. And in preparing to testify for today's deposition, have you reviewed the deposition of either Dr. Quinones or Dr. Rivera?
> A. No, I have not.
> Q. Were you provided with any information about when MRI and neurosurgery would have been expected to be provided to Mr. Christie, had he stayed at Centro Medico de Puerto Rico, prior to today's deposition?
> MR. RENDA: So, Mr. Rolander, to the extent you were provided information from my office, myself, my partner, that is responsive to Mr.

Flanagan's question, I am going to instruct you not to answer the question
on the basis of attorney-client privilege. If you can answer the question
relying on information that you have not received from us, then go ahead
and answer it. If you feel like you cannot, then I am instructing you --
instructing you not to answer the question.
WITNESS ROLANDER: I can't answer the question.
BY MR. FLANAGAN:
Q. And you can't answer the question because you would be relying on
information provided to you by the attorneys for AGA and JIC?
A. Yes.

Ex. B, p. 241, L. 15 through p. 242, L. 25.

Christie's questions blatantly seek the mental impressions of counsel and call for AGA's corporate representative to waive attorney-client and/or work product privileges. Any attempt to discover the basis for a party's affirmative defenses in a Rule 30(b)(6) deposition is inappropriate because it implicates attorney work product, legal opinions or conclusions, and/or expert testimony. *See In re: Independent Serv. Orgs. Antitrust Litig.*, 168 F.R.D. 651 (D. Kan. 1996)(granting protective order to prohibit Rule 30(b)(6) topic requiring witness to testify about affirmative defenses); *Lyew v. Homebanc Mortg. Corp.*, 2006 WL 8462692, at *1 (S.D. Fla. Dec. 20, 2006)(same). Christie's attempt to elicit testimony regarding AGA's "position regarding," and "interpretation of" are synonymous with eliciting testimony regarding AGA's affirmative defenses and AGA's counsel properly objected to Christie's questions and instructed witness not to divulge any information provided to him by counsel's office in order to preserve attorney-client privilege.

Furthermore, Christie's counsel had access to this information by other means. AGA served Christie with supplemental answers to initial interrogatories, providing specific details related to its affirmative defenses. *See* Ex. A. Mr. Rolander refers to the information provided in these interrogatories during his testimony.

Q. Other than the attempts to contact the Christies via telephone when they
didn't answer or the call didn't go through, are there any other attempts to
contact them that you are referring to or relying upon here?

MR. RENDA: Objection to form.
WITNESS ROLANDER: Just give me a minute, if you don't mind.  It's our position that by things that Mr. Christie did or failed to do he waived his rights under the policy.
BY MR. FLANAGAN:
Q. Okay. And I am just trying to understand what facts you are relying upon for saying "he waived his rights under the policy."
So there --
MR. RENDA: Object --
BY MR. FLANAGAN:
Q. -- is there a specific act that you can refer me to?
A. So I believe those have been provided through other means to you and I believe we are actually finding out more about them as the discovery continues.
Q. Sitting here today as the corporate representative on the affirmative defenses, can you provide any facts that you are relying upon or JIC or AGA asserting plaintiff waived his rights under the policy?
MR. RENDA: Objection to form, asked and answered.
WITNESS ROLANDER: Not beyond those that have already been provided to you or those that we may discover subsequently.
BY MR. FLANAGAN:
Q. You know, the facts "that have already been provided to you" is -- is vague. So could you -- could you give me a specific set of facts that you are relying upon for that?
MR. RENDA: Objection to form, asked and answered.
WITNESS ROLANDER: Should I respond?
MR. RENDA: You should respond with the same answer you just gave him.
MR. FLANAGAN: We are now instructing the witnesses what to say. Court reporter, could you please mark that.
WITNESS ROLANDER: So I would refer to my previous -- I would refer to my previous response. By his actions and inactions, he waived his rights. We talked about specifically the things that he did and didn't do. I refer to those responses.

Ex. B, p. 228, L. 20 through p. 230, L. 24.

Again, AGA's counsel properly objected and instructed the witness not to disclose information provided by counsel's office in order to preserve attorney-client privilege. The witness was permitted to and did answer Christie's questions by providing non-privileged information.

Prior to this deposition, AGA specifically objected to and sought a protective order limiting Christie from seeking testimony from AGA regarding the mental impressions of counsel protected by the work product doctrine and that is attorney-client privileged. [63, at 3-4]. Furthermore,

Christie has not demonstrated he has "substantial need" for this information to prepare his case and that he "cannot without undue hardship, obtain the substantial equivalent by other means" as required under the Federal Rules of Civil Procedure. Fed. R. Civ. P. 26(b)(3)(A). To require AGA to first disclose this information in deposition and then seek a protective order is a clear violation of the attorney-client privilege and antithetical to the Federal Rules of Civil Procedure. *See id.* AGA's counsel properly objected and instructed witness not to answer to preserve attorney-client privilege. Therefore, Christie's Motion.

### III.  AGA'S COUNSEL MADE PROPER OBJECTIONS UNDER FEDERAL RULE OF CIVIL PROCEDURE 32(d)(3) THROUGHOUT THE DEPOSITION.

Any objection to evidence during a deposition shall be stated concisely and in a non-argumentative and nonsuggestive manner. *Regions Bank v. Legal Outsource PA*, 2016 WL 7228738 (M.D. Fla. Mar. 10, 2016). If counsel believes that he must make relevancy objection during deposition, objection should  briefly be made for the record and the deposition should continue with the testimony being taken subject to the objection. *Quantachrome Corp. v. Micromeritics Instrument Corp.*, 189 FRD 697 (S.D. Fla. 1999). Objections should be limited to those under Federal Rules of Civil Procedure 32(d)(3). *Id.* Despite Christie's misrepresentations, AGA's counsel made clear and concise objections throughout this deposition. There are limited instances in which greater commentary or an instruction not to answer were necessary due to Christie's inappropriate line of questioning.

Under Federal Rule of Civil Procedure 32(d)(3), counsel may properly object to a question on the basis of competence, form, relevancy and to preserve privilege. Fed. R. Civ. P. 32. In accordance with this rule, AGA's counsel regularly made concise, non-argumentative objections

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

on the basis of form and relevancy. The majority of the time, AGA's counsel merely objected to form of the question. *See generally* Ex. B.

Throughout AGA's corporate representative deposition, Christie's counsel repeatedly posed questions to elicit inappropriate testimony that was irrelevant, already asked and answered, called for expert opinions, and was far beyond the scope of the 30(b)(6) deposition notice. As such, AGA's counsel was required to  repeatedly object to counsel's questions. Once Christie's counsel began veering from the topics listed in his 30(b)(6) deposition notice and asking questions of the witnesses in their "individual capacities," greater commentary was imperative to clarify that the witnesses were no longer testifying on behalf of AGA.

> Q. Okay. So let's go back to my question. Have you spoken to any medical doctors about the care Mr. Christie received in this case?
> MR. RENDA: Objection to form of the question. Again, are you asking this individual, or you're asking AGA?
> MR. FLANAGAN: I'm asking him.
> MR. RENDA: No, I am not going to let that happen. He's not here as him. He's here as the corporate entity. I mean, you went through this with Mr. Drahos the last time.

Ex. B, p. 69, L. 20 through p. 70, L. 8.

> Q. So do you as the CMO [Chief Medical Officer of AGA/JIC] now think it's important to know, when someone is having an emergent medical condition, how much time you have to get them to a facility that can provide definitive care?
> MR. RENDA: Just a minute. Again, Mr. Flanagan, I am just saying she is testifying as AGA, not a chief medical officer of a company. So objection to the form.

Ex. B, p. 176, L. 16 through L. 25.

> WITNESS CASTRO: Answering as myself and not AGA, that information would have been helpful.
> BY MR. FLANAGAN:
> Q. Why would it have been helpful?
> MR. RENDA: Objection to the form of the question.
> MR. DRAHOS: Join.
> MR. RENDA: Just to be clear, are you going to continue to ask her, as an individual, questions about her opinion, as an individual, because that is

Fowler White Burnett P.A. • Brickell Arch, 1395 Brickell Avenue, 14th Floor, Miami, Florida 33131 • (305) 789-9200

> demonstrably outside the scope of this deposition? So I am trying to speak as low as possible so as not to be framed as whatever it was. But I object, I can't have this witness testify as herself about medical opinions and expert opinions. So I gave you a lot of leeway, but that's it.

Ex. B, p. 178, L. 17 through p. 179, L. 10.

> Q. Were you provided with any information about when MRI and neurosurgery would have been expected to be provided to Mr. Christie, had he stayed at Centro Medico de Puerto Rico, prior to today's deposition?
> MR. RENDA: So, Mr. Rolander, to the extent you were provided information from my office, myself, my partner, that is responsive to Mr. Flanagan's question, I am going to instruct you not to answer the question on the basis of attorney-client privilege. If you can answer the question relying on information that you have not received from us, then go ahead and answer it. If you feel like you cannot, then I am instructing you -- instructing you not to answer the question.

Ex. B, p. 242, L. 1 through 18.

Christie's counsel attempted to elicit inappropriate testimony far exceeding the scope of the 30(b)(6) deposition notice, that was irrelevant, or that was privileged, forcing AGA's counsel to object to same. AGA did not make these objections to disrupt the deposition or instruct the witness on how to respond. In these specific instances, Christie's questions required more explanation from AGA's counsel than a simple objection in order to clarify the record and preserve privilege. AGA's objections were proper under Federal Rule of Civil Procedure 32(d)(3). Therefore, Christie's Motion.

## IV.  CHRISTIE'S MOTION FOR SANCTIONS IS NOT WARRANTED.

Courts have broad discretion to impose sanctions. This power derives from the court's inherent power to manage its own affairs and to achieve the orderly and expeditious disposition of cases. *Flury v. Daimler Chrysler Corp.*, 427 F.3d 939, 944 (2005); *See also Chambers v. NASCO, Inc.,* 501 U.S. 32, 43, (1991). Accordingly, sanctions for discovery abuses are intended to prevent unfair prejudice to litigants and to insure the integrity of the discovery process. *Flury v. Daimler*

FOWLER WHITE BURNETT P.A. • BRICKELL ARCH, 1395 BRICKELL AVENUE, 14TH FLOOR, MIAMI, FLORIDA 33131 • (305) 789-9200

CASE NO. 1:20-cv-22439-RNS

*Chrysler Corp.*, 427 F.3d 939, 944 (11th Cir. 2005); *see also Gratton v. Great American Communications*, 178 F.3d 1373, 1374 (11th Cir.1999).

"A judge's decision as to whether a party or lawyer's actions merit imposition of sanctions is heavily dependent on the court's firsthand knowledge, experience, and observation. At times the actions of the individual or party involved may be judged over the course of time." *Harris v. Chapman*, 97 F.3d 499, 506 (11th Cir. 1996). In *Karteganer v. Carnival Corp.*, Carnival Corporation's corporate representative was unprepared to testify on the designated topics and did not make any meaningful objections to topics before the first deposition. 380 F.Supp. 3d 1290 (S.D. Fla. 2019). The parties agreed to continue the deposition, and Carnival again presented a designee who was not prepared to testify about the subject event beyond his personal knowledge. *Id.* The court sanctioned Carnival by deeming the notice element of the plaintiff's negligence claim to be established. *Id.*

Unlike Carnival, AGA presented three knowledgeable witnesses, well-prepared to testify on all sixty-five (65) topics noticed by Christie. After expending nearly the entire seven hours available for deposition, Christie began asking the most objectional questions very late in the day. The questions were completely irrelevant, had been asked and answered already, called for expert opinions, and were far beyond the scope of Rule 26(b)(1) and Christie's 30(b)(6) deposition notice, rendering it impossible for AGA to have properly prepared the witness. Christie's counsel was also already provided with much of the information he is now attempting to compel through supplemental answers to interrogatories and earlier depositions. *See supra* at pp. 7, 12. Plaintiff has not been prejudiced by any alleged lack of information.

Moreover, prior to the deposition, AGA's counsel conferred with Christie's counsel via email on April 22 and by phone on April 27, 2021 in an effort to narrow the scope of the Notice.

- 18 -

However, Christie's counsel did not agree to any limitation of the most burdensome and unwieldly topics in the Notice. AGA's counsel then filed a motion for protective order and objections to Christie's Notice seeking to limit the scope of his Rule 30(b)(6) deposition. Again, Christie's counsel refused to any limitation and proceeded to inappropriately seek testimony from AGA's corporate representatives that are of an expert nature and/or reveal mental impressions of counsel protected by the work product doctrine and/or attorney-client privileged information.

Despite Christie's misrepresentations, AGA's designees provided meaningful testimony on all sixty-five topics listed in Christie's 30(b)(6) deposition notice. Limited objections were on the subject areas previously objected to by AGA, and witnesses were instructed not to answer in only two instances where Christie's counsel inappropriately attempted to elicit testimony on issues that were of  an expert nature and protected by the attorney-client privilege. AGA's actions do not warrant sanctions. *See Smith v. Bank of America Home Loans*, 2014 WL 169845 *2 (M.D. Fla. Jan. 15, 2014)(denying plaintiff's motion for sanctions where plaintiff's questions exceeded the scope of his 30(b)(6) deposition notice, defendant's corporate representative provided over seven hours of knowledgeable testimony on noticed topics, and defendant supplemented missing information). Therefore, this court should deny Christie's Motion.

## V. CHRISTIE FAILED TO PROVIDE PROPER NOTICE OF TAKING DEPOSITION OF JEFFREY ROLANDER, DR. MELISSA CASTRO, AND LASHANTA SULLIVAN

To the extent Christie wanted to depose AGA's corporate representatives, Jeffrey Rolander, Dr. Melissa Castro, and LaShanta Sullivan as individuals, he failed to provide proper notice to the parties. Rule 30(b)(1) requires a party seeking to depose a person "to give reasonable written notice to every other party." *Id.* The notice must inform the opposing party of the date, time, and location of the deposition with sufficient time for compliance. *See Huddleston v. Bowling Green Inn of*

*Pensacola*, 333 F.R.D. 581 (N.D. Fla. 2019), *citing Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 173 (4th Cir. 2014) (holding that a deposition notice was unreasonable when it was provided only five days before the deposition); *Mims v. Cent. Mfrs. Mut. Ins. Co.*, 178 F.2d 56, 59 (5th Cir. 1949).

A party cannot move to compel a deposition before showing "that it served notice of the deposition on the opposing party and that the opposing party failed to attend." *Nuskey v. Lambright*, 251 F.R.D. 3, 12 (D.D.C. 2008) (denying a motion to compel when the witness did not receive written notice stating the time and the place of the deposition). If reasonable notice of deposition is not given, the court cannot compel witnesses, including the parties, to attend any depositions. *Pegoraro v. Marrero*, 281 F.R.D. 122, 128 (S.D.N.Y. 2012); *Siegel v. Truett-McConnell Coll., Inc.*, 13 F. Supp. 2d 1335, 1337 (N.D. Ga. 1994) ("The court has no evidence before it that proper notice was given for any of defendants' witnesses to appear at a deposition. Without proper notice there can be no failure to appear."), *aff'd on other grounds*, 73 F.3d 1108 (11th Cir. 1995).

Here, Christie noticed AGA for deposition; not Jeffrey Rolander, Dr. Melissa Castro, or LaShanta Sullivan. AGA's counsel's instructions to Mr. Rolander and Dr. Castro not to answer certain questions posed to them as individuals were partially based on Christie's failure to provide them with proper notice of his intent to depose them, individually. Refusing to answer questions at deposition is no different from a failure to appear for deposition. If, as here, reasonable notice of deposition is not given, the court cannot compel witnesses, including parties, to attend any depositions.

- 20 -

CASE NO. 1:20-cv-22439-RNS

## **CONCLUSION**

Therefore, based on the foregoing, Defendants, AGA SERVICE COMPANY, d/b/a ALLIANZ GLOBAL ASSISTANCE and JEFFERSON INSURANCE COMPANY, respectfully submit that this court should deny Christie's Motion because AGA properly instructed its witness not to answer Christie's inappropriate questions, properly raised the attorney-client privilege, and made proper objections under Federal Rules of Civil Procedure 32(d)(3). Moreover, AGA acted in good faith by producing three (3) well-prepared, knowledgeable witnesses to testify to Christie's sixty-five (65) topics and supplementing its interrogatory responses. Christie has not been prejudiced by any alleged lack of information.

## **CERTIFICATE OF SERVICE**

I hereby certify that on June 16, 2021, the foregoing document was electronically filed with the Clerk of the Court using CM/ECF.  I also certify that the foregoing document is being served this day on all counsel of record on the attached Service List in the manner specified, either via transmission of Notices of Electronic Filing generated by CM/ECF or in some other authorized manner for those counsel or parties who are not authorized to receive electronically Notices of Electronic Filing.

/s/ Bruno Renda_____
Bruno Renda

- 21 -

/s/ Bruno Renda
Walter G. Latimer, BCS
Fla. Bar No. 679097
Email: wlatimer@fowler-white.com

Bruno Renda
Fla. Bar No. 91971
Email: rendab@fowler-white.com

FOWLER WHITE BURNETT, P.A.
Brickell Arch, Fourteenth Floor
1395 Brickell Avenue
Miami, Florida 33131
Telephone:    (305) 789-9200
Facsimile:    (305) 789-9201

CASE NO. 1:20-cv-22439-RNS

**<u>SERVICE LIST</u>**

CASE NO. 1:20-cv-22439-RNS

Michael J. Drahos, Esq.
GrayRobinson, PA.
1500 North Flagler Drive
Suite 1425
West Palm Beach, FL 33401
E-Mail: michael.drahos@gray-robinson.com;
lilia.parker@gray-robinson.com
Telephone: (561) 268-5727
Facsimile: (561) 268-5745
Attorney for Defendant - Royal Caribbean

Michael T. Flanagan, Esq.
Flanagan Personal Injury & Wrongful Death
Law Firm
2525 Ponce De Leon Blvd
Suite 650
Coral Gables, FL 33134
E-Mail: MTF@Florida-Justice.com;
mtfassistant@florida-justice.com;
nmp@florida-justice.com; ruth@florida-justice.com
Telephone: (305) 638-4143
Facsimile: (305) 397-2636
Attorney for WILLIAM CHRISTIE

Lisa S. Levine, Esq.
LISA S. LEVINE, P.A.
1655 North Commerce Parkway
Suite 101
Weston, Florida 33326
E-Mail: lisa@floridainjuryclaim.com
Telephone: (954) 332-6100
Facsimile: (954) 349-2975
Attorney for WILLIAM CHRISTIE

Mr. Phillip D. Parrish
Phillip D. Parrish, P.A.
7301 SW 57 Court
Suite 430
Miami, FL 33143
E-Mail: phil@parrishappeals.com;
betty@parrishappeals.com
Telephone: (305) 670-5550
Facsimile: (305) 670-5552
Attorney for WILLIAM CHRISTIE (Co-Counsel)

Jack Reiter, Esq.
GrayRobinson, P.A.
333 SE 2nd Avenue
Suite 3200, Miami FL
E-Mail: Jack.Reiter@gray-robinson.com;
Alexis.Botticelli@gray-robinson.com
Telephone: (305) 416-6880
Facsimile: (305) 416-6887
Attorney for Defendant - Royal Caribbean

- 23 -